**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Leticia Metzgar,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-24-02410-PHX-KML<br><br>**ORDER** |

Plaintiff Leticia Metzgar seeks review of the Social Security Commissioner's final decision denying her disability insurance benefits. Because the Administrative Law Judge's ("ALJ's") decision is supported by substantial evidence and is not based on harmful legal error, it is affirmed.

**I.   Background**

Metzgar applied for disability insurance benefits on September 27, 2019, alleging a disability onset date of September 24, 2019. (Administrative Record ("AR") 43.) Her claim was denied initially and on reconsideration. (AR 43.) Metzgar then presented her case to an ALJ who found she was not disabled. (AR 43–55.) The Appeals Council denied her request for review (AR 12), and she then appealed to this court.

**II.  Legal Standard**

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a

preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

**III.  Discussion**

Metzgar argues the ALJ committed two materially-harmful legal errors in analyzing her claim: (1) finding Dr. Gregory L. Umphrey's medical opinion partially unpersuasive and (2) rejecting Metzgar's symptom testimony without adequate justification. She seeks a remand for further administrative proceedings.

**A.  The ALJ's Five-Step Disability Evaluation Process**

Under the Social Security Act, a claimant for disability insurance benefits must establish disability prior to the date last insured. 42 U.S.C. § 423(c); 20 C.F.R. § 404.131. A claimant is disabled under the Act if she cannot engage in substantial gainful activity because of a medically-determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months or more. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

Whether a claimant is disabled is determined by a five-step sequential process. *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step three, the claimant must show that her impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the claimant must show her residual functional capacity ("RFC")—the most she can do with her impairments—precludes her from performing her past work. *Id.* If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If the inquiry proceeds and the claimant meets her burden at step four, then at step five the Commissioner must determine if the claimant is able to perform other work that "exists in significant numbers

in the national economy" given the claimant's RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

The ALJ found Metzgar had "not engaged in substantial gainful activity" since her disability onset date and that she had a severe impairment[1] for a continuous period of twelve months, satisfying her burden at steps one and two. *Id.* § 404.1520(a)(4)(i)–(ii). (AR 46.) At step three, the ALJ determined Metzgar's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment and at step four, that Metzgar had the RFC to perform light work with some additional limitations. (AR 47, 49.) In evaluating Metzgar's RFC, the ALJ discounted part of Dr. Umphrey's medical opinion because he found it inconsistent with and unsupported by the medical record. (AR 53.) The ALJ also partially discounted Metzgar's symptom testimony because it was inconsistent with the medical evidence and other evidence in the record. (AR 49.)

The ALJ used Metzgar's RFC to conclude at step five[2] that "there were jobs that existed in significant numbers in the national economy that [she] could have performed," so she was not disabled. (AR 53–55.) Specifically, the ALJ found Metzgar could work as a housekeeping cleaner, production assembler, and office helper as those jobs are defined in the Dictionary of Occupational Titles. (AR 54.)

**B. The ALJ's Evaluation of Dr. Umphrey's Medical Opinion and Metzgar's Symptom Testimony**

The ALJ deemed Dr. Umphrey's medical opinion "partially persuasive" (AR 53) and found Metzgar's impairments could cause her symptoms, but not to the severity she alleged in her testimony (AR 49). Metzgar challenges both conclusions on largely the same grounds. (*See* Doc. 12 at 22 (noting "the reasons [the ALJ] provided" for discounting Dr. Umphrey's medical opinion and Metzgar's symptom testimony "are the same" and "largely mirror[ ]" each other).) She correctly points out the ALJ must meet a higher standard to

---

[1] The ALJ found Metzgar had the following severe impairments: degenerative disc disease, carpal tunnel syndrome, and anxiety. (AR 46.)
[2] The ALJ did not analyze at step four if Metzgar could perform her past relevant work because she had no past relevant work. (AR 53.)

- 3 -

reject subjective symptom testimony than to reject a medical opinion,[3] but that distinction does not change the analysis here because the ALJ met both standards. The ALJ's rationale for partially rejecting Dr. Umphrey's medical opinion and Metzgar's symptom testimony will therefore be evaluated together.

Dr. Umphrey opined that Metzgar's ailments—including right carpal tunnel syndrome, low back pain, joint dysfunction, degenerative disc disease, cervical spondylosis without myelopathy, liver hemangioma, bilateral sciatica, lumbar spasm, and bilateral rotator cuff impingement syndrome (AR 1416)—would severely limit her ability to sit or stand and lift or carry, and interfere with her ability to sustain full time work. (AR 1439–40.) The ALJ found Dr. Umphrey's conclusion that Metzgar's shoulder symptoms had improved persuasive and credited the lift-and-carry limits he imposed, but found the "remainder of the limitations" he assessed "not persuasive and not consistent with" or supported by the medical record. (AR 53.)

The ALJ likewise discounted Metzgar's symptom testimony because it was inconsistent with the medical evidence, which did not support the loss of function she described. (AR 49.) Metzgar testified she had difficulty driving due to her disabilities, had tingling and weakness on her right side, recently had pain in her foot due to a callus, and struggled with concentration which caused issues with her organization and memory. (*See* AR 49.)

Metzgar's objections to the ALJ's discounting of her symptom testimony and Dr. Umphrey's medical opinion fall into three buckets. She challenges: (1) the ALJ's reliance on irrelevant evidence such as her gait and strength and the fact she had been a student; (2) the ALJ's reliance on her improvement from treatment; and (3) the ALJ's reliance on her daily activities.

---

[3] An ALJ's decision to discredit a medical opinion "must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787. In contrast, because the ALJ did not find Metzgar was malingering, he could only discredit her symptom testimony by providing "specific, clear and convincing" reasons for doing so. *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017).

**1. The ALJ's Reliance on Purportedly Irrelevant Findings**

The ALJ noted Metzgar had a normal gait, denied gait abnormalities, and had normal strength. (AR 51.) Metzgar argues these findings were irrelevant because she did not allege gait or strength issues. (Doc. 12 at 18, 24.) The Commissioner, however, points out these findings "directly contradict [Metzgar's] claims of tingling and weakness on her right side, as well as claims of stiffness, arthritis, and tendonitis, and undermine her claim that she is more limited than assessed in her RFC." (Doc. 16 at 10 (citing AR 49).) And they showed that "despite her claimed pain, [she] did not display signs of compensating for it." (Doc. 16 at 10.) Metzgar argues the Commissioner, who is not a medical professional, is providing post hoc rationalizations for the ALJ's conclusions. (Doc. 17 at 4–5.) But even if the ALJ had not considered findings related to Metzgar's gait and strength, his decision to discount her symptom testimony and Dr. Umphrey's medical opinion would still be supported by substantial evidence because he cited a range of other supportive medical records (*see* AR 49–53). *See Orn*, 495 F.3d at 630 ("Substantial evidence is more than a mere scintilla but less than a preponderance . . . .") (quoting *Burch*, 400 F.3d at 679). Those records included the opinions of medical professionals—the state agency medical consultants—who indicated Metzgar had fewer restrictions because her physical impairments improved with treatment, her carpal tunnel symptoms stabilized with injections, she responded well to lumbar radiofrequency ablation, and she had normal gait and strength. (AR 52–53.) The ALJ's decision was therefore supported by substantial evidence. *See Lenord D. v. O'Malley*, 758 F. Supp. 3d 1266, 1277 (E.D. Wash. 2024) ("It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence."); *Norris v. Colvin,* 160 F. Supp. 3d 1251, 1273 (E.D. Wash. 2016) ("[I]t is the ALJ's responsib[ility] to resolve conflicts and inconsistencies between medical opinions.").

The same analysis applies to the ALJ's reference to Metzgar's status as a student as a basis for discounting Dr. Umphrey's medical opinion. (AR 53.) Metzgar testified she was trying to get her GED at Central Arizona College but was unable to complete her studies

due to her divorce and her health. (AR 314.) The ALJ noted that Metzgar's status as a student "indicat[ed] she was not as limited as alleged." (AR 53.) The Commissioner posits her status as a student, even if short lived, was relevant because Dr. Umphrey "explicitly opined that [Metzgar] would have lapses in concentration and memory on a regular basis." (Doc. 16 at 16 (citing AR 1440).) But even if his reliance on Metzgar's status as a student was an error, it was harmless because it was "irrelevant to the [ALJ's] ultimate disability conclusion when considering the record as a whole." *Rogers v. Colvin*, 970 F. Supp. 2d 1147, 1153 (W.D. Wash. 2013). That is, the ALJ's decision to discount Dr. Umphrey's medical opinion was still supported by the substantial evidence described above even without considering Metzgar's status as a student. (*See* AR 49–53.)

**2. The ALJ's Reliance on Symptom Improvement from Treatment**

The ALJ cited Metzgar's improvement with treatment as a reason to discount her symptom testimony and Dr. Umphrey's medical opinion. (AR 51, 53.) He also remarked that the "majority of her treatment was routine with conservative measures." (AR 51, 53.) Metzgar disputes both assertions, contending her treatment was not conservative and the ALJ overstated her level of improvement. (Doc. 12 at 13, 15, 17.)

As to whether her treatment was conservative, Metzgar quibbles over whether the steroid injections she received qualify as a conservative treatment method under Ninth Circuit precedent. (Doc. 12 at 17 (quoting *Garrison v. Colvin*, 759 F.3d at 995, 1015 n.20 (9th Cir. 2014)).) But it is not clear the ALJ was referring to the steroid injections alone as conservative treatment, as opposed to Metzgar's entire course of treatment (which the ALJ elsewhere described). (*See* AR 51.)

Even if he was specifically describing steroid injections as conservative, the Ninth Circuit has rejected a claimant's argument "that the ALJ erred in characterizing her treatment as conservative, particularly regarding her injection." *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019). In *Fry*, the court explained *Garrison*—the case Metzgar cites for her contention that her injections were not conservative treatment—"did not base its holding on whether the claimant's treatment was conservative or not." *Id.* (citing

*Garrison*, 759 F.3d at 1015). Instead, the ALJ in *Garrison* committed a different error regarding the claimant's testimony which was one of the bases for the court's reversal of the ALJ's denial of benefits. *Id.* (citing *Garrison*, 759 F.3d at 1015). *Garrison* therefore has no bearing on the issue of whether injections are conservative treatment.

More importantly, regardless of whether the injections were permissibly classified as conservative treatment, "the evidence shows it was effective in treating [Metzgar's] conditions, which contradicts her allegations of disabling symptoms." (Doc. 16 at 9.) The ALJ appropriately relied on the effectiveness of treatment—which Dr. Umphrey's opinion itself described (AR 1416) and the state agency physicians corroborated (AR 52–53)—as not supporting the limitations either Dr. Umphrey or Metzgar described. And indeed, it is the ALJ's responsibility to "determin[e] credibility, resolv[e] conflicts in medical testimony, and . . . resolv[e] ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). For these reasons, it was not error for the ALJ to rely on Metzgar's symptom improvement from her injections. *See Floe v. O'Malley*, No. 23-35589, 2024 WL 4601594, at *1 (9th Cir. Oct. 29, 2024) (noting improvement with treatment is a valid reason to discount a claimant's symptom testimony).

Metzgar also contends the ALJ overstated her improvement in symptoms, arguing some improvement "does not equate to the ability to perform competitive employment." (Doc. 12 at 13.) But as the Commissioner notes (Doc. 16 at 15), an ALJ "cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). This principle "holds true even where the claimant introduces medical evidence showing that [s]he has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Id.* Metzgar does not argue the treatments cited by the ALJ were ineffective (nor would the medical records support such a claim), only that they were not as effective as the ALJ suggested. (Doc. 12 at 13.) But the ALJ merely stated she "had improvement" from treatment, that her symptoms were "effectively treated," and that she

had a "good response" to treatment. (AR 51.) That finding tracks the opinions of Dr. Umphrey and the state agency physicians. (*See* AR 52–53.)

Metzgar cites no authority suggesting it is legal error for an ALJ to over-rely on a claimant's responsiveness to treatment and she has not shown the ALJ did so here. Improvement with treatment is a valid, specific, clear, and convincing reason to discount a claimant's symptom testimony. *See Floe*, 2024 WL 4601594, at *1. For these reasons, the ALJ did not err in his consideration of Metzgar's responsiveness to treatment.

### 3. The ALJ's Reliance on Metzgar's Daily Activities

The ALJ also referenced Metzgar's daily activities as a reason for discounting her symptom testimony. (*See* AR 50.) Inconsistencies between a claimant's symptom testimony and her daily activities provide a valid ground for discounting that testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a) ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

The ALJ noted Metzgar "joined a boxing gym with her children" and reported being busy caring for her grandchildren. (AR 50 (citing AR 2939, 2949).) Metzgar argues these references were merely part of the ALJ's factual summary and the Commissioner is improperly trying to retroactively tie them to the ALJ's credibility determination. (Doc. 17 at 7–8.) But the record indicates the ALJ *did* rely on these activities as reasons to discount Metzgar's symptom testimony. (*See* AR 49–50.) Metzgar's argument is therefore without merit, and the ALJ did not err by relying on her daily activities as a reason to discount her symptom testimony.

### 4. Harmlessness

Even assuming the ALJ erred in one or more of the ways Metzgar claims, any such error would be harmless because the ALJ's decision to discount the opinion of Dr. Umphrey and to discount Metzgar's symptom testimony was otherwise supported by substantial evidence. The ALJ cited ample medical records supporting his nondisability

findings (*see* AR 51), including the evaluations of state agency medical consultants (AR 52–53). As such, the ALJ's potential errors would be inconsequential to the ALJ's ultimate nondisability determination and would not provide a reason to reverse the ALJ's decision. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (simplified) (an ALJ's errors are harmless if they are "inconsequential to the ultimate nondisability determination.").

### IV. Conclusion

The ALJ's partial discounting of Dr. Umphrey's medical opinion was supported by substantial evidence and his partial discounting of Metzgar's symptom testimony was supported by specific, clear, and convincing reasons. Even if some of the ALJ's rationales were flawed, those errors would be harmless because they did not affect the ALJ's nondisability determination. As a result, the ALJ's decision that Metzgar is not disabled is affirmed.

Accordingly,

**IT IS ORDERED** affirming the December 19, 2022, decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 5th day of May, 2025.

Honorable Krissa M. Lanham
United States District Judge